UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FA DA CHEN,

               Petitioner,                      Case No. 1:26-cv-2034

v.                                       HON. ROBERT J. JONKER

MARKWAYNE MULLIN et al.,

               Respondents.

_____/

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1). For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241.

## **BACKGROUND**

Petitioner is a native and citizen of the People's Republic of China. (Acree-Manuel Decl. ¶ 4, ECF No. 4-1, PageID.26.) Petitioner entered the United States in 1993 without inspection as a minor. (*Id*.) On May 21, 1993, immigration officials detained Petitioner. (*Id*. ¶ 5.) On June 9, 1993, an immigration judge ordered Petitioner removed to China. (Immigration Judge Order, ECF No. 4-3, PageID.38.) Petitioner did not file an appeal with the Board of Immigration Appeals (BIA) (Acree-Manuel Decl. ¶ 6, ECF No. 4-1, PageID.26), rendering Petitioner's order of removal administratively final on June 21, 1993, (Immigration Judge Order, ECF No. 4-3, PageID.38.)

Because Petitioner was a minor, Petitioner was placed with Bethany Christian Services in Grand Rapids, Michigan. (Acree-Manuel Decl. ¶ 7, ECF No. 4-1, PageID.27.)

On March 30, 1998, Petitioner was released from Bethany Christian Services and was granted humanitarian parole until March 30, 1999. (*Id*. ¶ 13; Conditions of Release, ECF No. 4-4, PageID.40.) On March 30, 2000, DHS extended Petitioner's humanitarian parole until March 30, 2001. (Form I-94, ECF No. 4-4, PageID.41.)

On September 15, 2014, ICE agents arrested Petitioner. (2014 Form I-213, ECF No. 4-5, PageID.46.) ICE sent a travel document request to the Consulate of China, but the Consulate responded that it was not able to process the request. (Acree-Manuel Decl. ¶¶ 16–17, ECF No. 4-1, PageID.28.) Petitioner was subsequently released from detention on an Order of Supervision on November 25, 2014, and served with a Form I-229B, Warning for Failure to Comply with Terms of Supervised Release. (*Id*. ¶ 18; Order of Supervision, ECF No. 4-7, PageID.84; Warning for Failure to Comply, ECF No. 4-7, PageID.88.)

A few years later, in 2016, Petitioner pled guilty to a "fraudulent act in a game" charge in Nevada. (ECF No. 4-1, PageID.28). He received a $2,000 fine for that offense. (*Id*.).

On January 14, 2026, ICE agents arrested Petitioner and served Petitioner with a Notice of Revocation of Release. (2026 Form I-213, ECF No. 4-8, PageID.90; Notice of Revocation of Release, ECF No. 4-10, PageID.97). On March 18, 2026, the ICE Detroit Enforcement and Removal Operations submitted a travel document request to ICE Headquarters. (Acree-Manuel Decl. ¶ 22, ECF No. 4-1, PageID.29). On or about May 22, 2026, ICE Headquarters informed ICE Detroit Enforcement and Removal Operations that the travel document request was pending a Nationality Verification Decision by the People's Republic of China. (*Id.* ¶ 25.) On July 14, 2026, ICE Headquarters informed ICE Detroit Enforcement and Removal Operations that Beijing

2

Immigration Officials were unable to verify Petitioner's nationality based upon the travel document request packet that was submitted, so ICE Headquarters resubmitted the travel document request that same day. (*Id.* ¶¶ 29–30, PageID.30.)

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.10.) In an order entered on July 14, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3). Respondents filed their response on July 17, 2026, (ECF No. 4), and Petitioner filed his reply on July 20, 2026, (ECF No. 5).

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## DISCUSSION

The parties agree that Petitioner is subject to a final order of removal. As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231. However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. In

3

response, Respondents argue that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  8 U.S.C. § 1231(a)(1)(A).  "During the removal period, the Attorney General shall detain the alien."  *Id.* § 1231(a)(2)(A).  8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed.  533 U.S. at 682.  In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal."  *Id.* at 699.  Therefore, the Court concluded that for post-removal-order detention to be authorized by the statute, the removal itself must be reasonably foreseeable.  *Id.*  The Court indicated that this inquiry would vary from case to case and that there was no specific point in time at which the detention became constitutionally impermissible.  *Id.*  Still, to assist the lower courts in making the difficult judgment calls about when the detention was no longer authorized by the statute, the Court designated six months as a "presumptively reasonable period of detention."  *Id.* at 701.  Even after six months has passed, though, the Court made clear that the alien may continue to be held unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*

4

Under this framework, it is the Petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon.  *Id.*  Only after the Petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable.  *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner has failed to show that his removal is not significantly likely to occur sometime soon. To the contrary, Respondents' evidence shows that the United States government is actively working towards effectuating petitioner's removal. Currently, DHS is in communication with immigration officials in China to secure Petitioner's travel documents. Less than two weeks ago, for example, DHS responded to China's latest update on Petitioner application by refiling the travel document request with additional information. (ECF No. 4-1, PageID.29-30); *see Khaleque v. Dep't of Homeland Sec.*, No. 08-CV-477S, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (finding a "significant likelihood of removal in the reasonably foreseeable future" where "the request for travel documents is pending, and, to date, the Consulate has given no indication that travel documents will not be issued"). True, DHS has dealt with setbacks during the removal process. But pointing to delays alone does not satisfy Petitioner's burden. *See Abdullahi v. Adducci*, No. 1:16-cv-933, 2016 WL 6662557 at *4 (W.D. Mich., Sept. 1, 2016) ("Mere delay by the foreign consulate in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"). Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent,

detention" that the Court in *Zadvydas* said would violate the constitution.[1]  *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit.  "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701.  Courts applying this principle recognize that even where the government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention.  *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation. An immigration official has testified that the government remains in discussions China to secure travel documents for Petitioner and effectuate his removal. It may be that China will eventually deny the Respondents' travel document and removal request. And, if that happens, removal might become more unlikely. But that is not yet the case. At this point, it seems to the Court that Petitioner's removal remains

---

[1] Petitioner's background also informs the Court's determination. As both parties acknowledge, Petitioner has a prior criminal conviction for an offense involving fraudulent behavior. A foreign country—in this case, China—might understandably review Petitioner's travel document application and removal request more carefully, which, in turn, could result in processing delays. If that is the case, "any delays in this case would have arisen not through government inaction but rather the Petitioner's own conduct." *Tien v. Raycraft*, No. 1:26-cv-874, ECF No. 8, PageID.92 (W.D. Mich. April 4, 2026); *cf. German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211-12 (3d Cir. 2020) (noting that the actions taken by the either the petitioner or the government, which result in delays, informs whether detention length in the pre-removal context). In this particular case, where the government has shown that it actively seeks removal and Petitioner's own actions may have caused delays in that process, Respondents deserve additional grace for any removal delays.

significantly likely in the reasonably foreseeable future.  Accordingly, the petition will be **denied**

**without prejudice**. Should the government's efforts to secure removal ultimately stall or fail to

bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no

longer reasonable.

## CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:    July 24, 2026                                    /s/ Robert J. Jonker
                                                           Robert J. Jonker
                                                           United States District Judge